# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LECIA MACE, | |
| Plaintiff, | Case No. 2:24cv62 |
| v. | |
| THE MARCED GROUP AT BETHEL, LLC d/b/a BUBBA'S GOURMET BURGHERS & BEER – SOUTHPOINTE, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, Lecia Mace, by and through her attorney, David Manes, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### Summary

1. Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* Plaintiff alleges that she was discriminated against on the basis of her sex and wrongfully terminated.

### Jurisdiction and Venue

2. This action arises under Title VII and the PHRA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. Plaintiff is a resident and citizen of Pennsylvania, and a substantial part of the events giving rise to the claims occurred in Western Pennsylvania. Therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and the venue is proper pursuant to 28 U.S.C. §1391(b).

4. Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations under Title VII on October 5, 2022, under charge number 533-2023-00033. *See Exhibit 1*.

5. The EEOC transferred the matter to the Pennsylvania Human Relations Commission ("PHRC") for investigation on January 30, 2023, under charge number 202300033.

6. Plaintiff was mailed a Notice of Right to Sue from the PHRC on October 6, 2023. This complaint has been filed within ninety (90) days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2*.

**Parties**

7. Plaintiff, Lecia Mace ("Plaintiff"), is an adult individual with a primary residence located at 932 Eagle Pointe Drive, Canonsburg, PA 15317.

8. Defendant, The Marced Group at Bethel, LLC d/b/a Bubba's Gourmet Burghers & Beer – Southpointe ("Defendant"), domestic limited liability company with an address of 3025 Willowbrook Drive, Bridgeville, PA 15017.

9. The business address where Plaintiff worked out of is 114 Southpointe Blvd, Canonsburg, PA 15317.

**Facts**

10. Plaintiff was hired by Defendant on March 25, 2022 as a bartender.

11. Shortly after beginning this position, Plaintiff started being discriminated against on the basis of her sex, by the General Manager and Director of Operations, Ashley McCoy.

12. Ashley began as the Director of Operations, so she could travel to other locations because nearly every one at the Southpointe location were having issues working with Ashley, such as Ashley targeting female employees.

13. Ashley fired some of the female employees of other locations, or harassed some female employees into quitting.

14. Ashley was made the General Manager of the Southpointe location while still having the title/role if being the Director of Operations.

15. Ashley is also a female; however, she has been having an affair with the Owner of the Defendant, "Bubba".

16. Bubba is a married male, who has been in a relationship with Ashley for about two years. Bubba panders to Ashley.

17. Bubba gave Ashley a ring, and has talked about leaving his wife for her.

18. Ashley began talking about hiring only men because "that will fix the dynamics of everything."

19. Ashley is jealous of Bubba speaking or looking at other females. Therefore, Ashley wants to replace the female employees and only hire males to prevent Bubba from speaking to or looking at another female.

20. Kristin Swink (bar manager), had heard of Ashley's plans to only hire men from now on.

21. Ashley eventually took away Plaintiff's bar shifts to give them to a man, Bruce, who had no experience or knowledge of mixing drinks.

22. After Bruce quit, he was kept on payroll by Ashley, just in case he wanted to come back.

23. Plaintiff was demoted to the position of server, making less money than she did as a bartender. Ashley demoted Plaintiff to server so that she could pick up the bartending shift and collect tips.

24. Ashley had Plaintiff doing managerial duties without being paid the wages according to that position.

25. Plaintiff was not a manager. She had a key to open and close the restaurant, count the money, and fill in the corms accordingly to the money count.

26. A regular customer, Rob, was known to tip well. On occasion, Rob would come with his friend Vicki.

27. Ashley scheduled herself to work bar shifts earlier in the day, but when the next shift would come in, she would say she is "keeping Rob".

28. Even though myself and others would continue to wait on Rob throughout the shift, Ashely would cash him out and take the tips from Rob.

29. There were other times that a party would come in, Ashley and Kristin would serve them and Plaintiff would continue making drinks.

30. Ashley would take half of the tips, leaving Plaintiff and Kristin to split the remaining.

31. Ashley scheduled Plaintiff until 9 p.m. but would tell her that she had to pick up her daughter and couldn't close.

32. Ashley would leave Plaintiff on a server's hourly wage to close the bar at 10 p.m. and clean for another hour or so after that, no tips.

33. Ashely hired an employee named Devin to be a server/host.

34. Devin was hired based on his sex, male.

35. Devin called Lydia a "bitch" but was not subject to any disciplinary action, because of his sex.

36. After this incident, Devin got more shifts.

37. A male named Luke was also hired, on the basis of his sex.

38. Ashley regularly scheduled herself to close but would have Plaintiff close instead.

39. Ashley's pay is based on a salary from the Galley.

40. The bartenders are to split the tips from the night.

41. Ashley regularly stole tips from the bartenders and other tipped employees. Ashley was not entitled to any of these tips.

42. Ashley did not claim the tips in order to avoid paying taxes. However, the tipped employees were paying taxes on the tips that Ashley stole.

43. Near the end of her employment with Respondent, rumors started to go around, saying that Plaintiff was sleeping with the new kitchen manager, a male, named Joe.

44. Ashley addressed the new kitchen manager twice about the rumors and was told him to "just be careful because people are watching you".

45. Ashley reprimanded Plaintiff and the kitchen manager for talking to each other too much, after working hours.

46. The kitchen manager is also witness to the discriminatory acts against Plaintiff and other females.

47. Plaintiff worked her last shift on Thursday, September 8, 2022.

48. Noelle (last name unknown), trained by Ashley and is treated like a "mole" went up to Joe, giggling and saying she had a secret.

49. The secret was that Plaintiff was about to be fired.

50. On Friday, the 9th, Ashley called Plaintiff at approximately 8:30 a.m. and said "effective immediately, we will no longer need your services at Bubba's Gourmet Burgher's & Beer – Southpointe".

51. Plaintiff asked for a reason and was told that they were just going in a different direction.

52. Plaintiff followed up with Ashley a few hours later, asking for an official email termination with the explanation that they were going in a different direction.

53. Plaintiff never heard back about this inquiry.

54. Plaintiff went to collect the tips from her Thursday shift.

55. Noelle, said to Plaintiff, "at least I'm not cheating on my boyfriend and fucking Joe."

56. Noelle said this in front of two other employees and a friend that Plaintiff had brought with her.

57. Noelle proceeded to say "let's take this outside. Come on, let's take this outside".

58. Plaintiff was not interested in verbally or physically fighting. She just wanted to collect the tips owed to her from the night before.

59. Plaintiff messaged Ashely and told her that her employees shouldn't physically threaten others. She responded and said Plaintiff was no longer allowed on the property.

60. Plaintiff had reached out to Ashely regarding her termination in explanation for the reasoning of "going in a different direction," but she never responded. She did respond to the latter message when Plaintiff reported her employee for trying to fight me.

61. Plaintiff believes she was terminated was due to the rumor of me sleeping with the kitchen manager, of which she was not.

62. The kitchen manager, male, was not terminated for this rumor.

## COUNT I
### Sexual Discrimination in Violation of Title VII

63. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

64. Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's…sex." 42 U.S.C. § 2000e–2(a)(2).

65. Defendant is an employer within the meaning of Title VII.

66. Plaintiff was an employee within the meaning of Title VII.

67. A plaintiff must first establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class, (2) she was qualified for the position she sought to attain or retain, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Jones v. Temple Univ., 622 F. App'x 131, 134 (3d Cir. 2015) (citing Mandel v. M & Q Packing Corp., 706 F.3d 157, 169 (3d Cir. 2013)).

68. Plaintiff's protected class is her sex/gender.

69. Plaintiff was fully qualified for the position she sought to retain.

70. Plaintiff was subjected to severe and continuing discrimination while working with Defendant.

71. Plaintiff was verbally attacked for a rumor in addition to the harassment she was forced to endure.

72. Plaintiff reported the verbal attack the day it happened.

73. Plaintiff was terminated by one of her harassers.

74. Plaintiff was terminated from her employment with Defendant because of her sex in violation of Title VII and suffered damages as a result.

75. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT II
### Sex Discrimination in Violation of the PHRA

76. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

77. Defendant is an employer within the meaning of the PHRA.

78. Plaintiff was an employee within the meaning of the PHRA.

79. Plaintiff is of the protected class of sex/gender.

80. Plaintiff was fully qualified to perform all aspects of her job.

81. Defendant engaged in discriminatory conduct in violation of the PHRA allowing the known discrimination to continue, allowing inappropriate comments, to take place, failing to remedy the situation, and then terminating her.

82. Plaintiff suffered an adverse employment action when she was terminated for a rumor that did not affect the male counterpart of the rumor.

83. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT III
### Wrongful Termination in Violation of Title VII

84. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

85. In order to state a claim, for retaliation under Title VII, a plaintiff must show:

   a. She "engaged in a protected activity," including "informal protests of discriminatory employment practices" made to a member of a defendant's management;

   b. "Adverse" employment action was taken against the plaintiff "after or contemporaneous with the employee's protected activity;" and

   c. "A causal connection between the protected activity and the adverse action." Moore v. Sec. U.S. Dept. of Homeland Sec., 718 Fed. Appx. 164, 166-67 (3d Cir. 2017) (unpublished) (quoting Daniels v. Sch. Dist. of Phila., 776 E. 3d 181, 193 (3d Cir. 2015).

86. Plaintiff engaged in protected activity when she reported the discrimination that she was facing.

87. Plaintiff suffered an adverse employment action in the form of her termination.

88. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT IV
### Wrongful Termination in Violation of the PHRA

89. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

90. The analytical framework used to evaluate a claim under the Pennsylvania Human Relations Act ("PHRA") is effectively indistinguishable from that under Title VII. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).

91. The totality of circumstances raises an inference of discriminatory action.

92. The employee who was consistently harassing Plaintiff faced no consequences or termination for their actions.

93. In fact, the male component of the rumor which led to Plaintiff's termination was not affected at all.

94. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby requests that this honorable Court enter judgement in her favor, and against the Defendant, and award all damages available at law and in equity, including: economic damages for back and front wages, compensatory damages for emotional distress, punitive damages, court costs, attorney fees, pre-judgement and continuing interest, and any other such relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ David M. Manes
David M. Manes, Esq.
PA ID No. 314661
**MANES & NARAHARI, LLC**
One Oxford Centre
301 Grant St, Suite 270
Pittsburgh, PA 15219
(412) 626-5570 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

## VERIFICATION

I, Lecia Mace, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Lecia Mace